FILED
2013 Dec-19  AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RHONDA LASHON STUBBS, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 2:13-cv-1200-KOB** |
| **THE CITY OF CENTER POINT,** ) | |
| **ALABAMA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the court on the "Joint Motion to Dismiss by Defendant City of Center Point, Alabama and Defendant Redflex Traffic Systems Inc." (Doc. 5). Plaintiffs Rhonda Lashon Stubbs and Celeita Snow brought a class action complaint in the Circuit Court of Jefferson County, Alabama, claiming the City of Center Point's traffic camera citation system violates Plaintiffs' due process rights. Defendants removed the case to federal court on the basis of federal question jurisdiction. (Doc. 1). Defendants' motion to dismiss, brought pursuant to Rules 12(b)(1) and 12(b)(6), presents a variety of arguments for why the court should dismiss the complaint, some jurisdictional and others on the merits. For the following reasons, the court will GRANT the motion IN PART and REMAND the remaining counts to the Circuit Court of Jefferson County, Alabama IN PART.

1

I.      STANDARD OF REVIEW

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is the same as the standard of review for a Rule 12(b)(6) motion to dismiss attacking the legal sufficiency of the complaint.  *See JWS Samuel, LLC v. Hillsborogh Cnty., Fla.*, Case No. 8:11-CV-02803-T-MAP, 2012 WL 3291831, at *1 (M.D. Fla. Aug. 13, 2012) (citing *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting and explaining its decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a 12(b) motion, the court is primarily limited to the face of the complaint and its attachments. "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings . . ." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) (internal citations omitted).

Furthermore, several circumstances exist in which a court may consider matters outside of the pleadings in ruling on a 12(b) motion without converting the motion to a motion for summary judgment. *See Davis v. Self*, Case No. CV-12-S-2401-NW, 2013 WL 754853, at *2 (N.D. Ala. Feb. 25, 2013). One of these circumstances arises when facts or documents are subject to judicial notice. *See* Fed. R. Evid 201(a)-(d); *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("In analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.").

The considerations in this case, as reflected in the facts below, are heavily influenced by proceedings occurring in the Alabama state courts and the Alabama state legislature. Some of the relevant documents are provided as attachments to the complaint; others have been subsequently submitted to the court. Because these documents are part of the public record, the court takes judicial notice of all the proceedings, filings, and orders in *City of Center Point v. Kenneth Crowder*, CV-2012-0929, as well as Act 2013-228. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment . . . Public records are among the permissible facts that a district court may consider."); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("a court may take notice of another court's order   . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"); *Redner v. Citrus County, Fla*., 919 F.2d 646, 651 n. 14 (11th Cir. 1990) (taking judicial notice of the outcome of state criminal proceedings in dismissing a claim under the doctrine of *Younger* abstention).

3

The court, therefore, considers these documents in its evaluation of this motion to dismiss without converting the motion to a motion for summary judgment. Although the court has not independently consulted the Alabama courts or legislature for the accuracy of the documents that the parties have provided, neither party has challenged the accuracy of the documents provided to the court through the briefing process and in response to the court's Order to Show Cause.

## II.      STATEMENT OF FACTS

### The Act and The Ordinance

In June 2011, Alabama Act 2011-580 became law. It provided for a local law that made running a red light, running a traffic control device, or speeding within the City of Center Point an Alabama civil offense. The Act also provided for the use of automated photographic enforcement of these violations, to be supervised by the Jefferson County Sheriff's Department or an authorized representative of the City as appointed by the Mayor.

Section 16(b) of the Act states: "An additional fee of ten dollars ($10) shall be collected by the Center Point Municipal Court in connection with notices issued under this act . . . as compensation for record keeping and transaction processing with respect to violation notices issued under this act." Act 2011-580, § 16(b). Under section 5(f), however, "[i]f the person is found not liable at the administrative adjudication hearing . . . any penalty and fee paid related to that citation shall be refunded." According to the complaint, the City has not collected the $10 fee for such notices and "Plaintiffs and all those similarly situated remain at risk for assessment and collection" of the fee. (Doc. 1, at ¶ 10).

On August 11, 2011, the Center Point City Council adopted Ordinance 2011-02, "An Ordinance Authorizing Automated Photographic Enforcement of Traffic Violations in the City of

Center Point, Alabama," which governs the traffic camera program in the City. The Ordinance

took effect on September 9, 2011. The City contracted with Redflex Traffic Systems, Inc. to

implement the Ordinance.

The complaint alleges both that the Mayor selected and appointed the hearing officer to

adjudicate all fines, penalties, and other matters arising under Ordinance 2011-02 (doc. 1, at ¶ 21)

and that Redflex provided the administrative hearing officer (doc. 1, at ¶ 33). The complaint also

alleges that "Center Point has maintained that it does not operate a municipal court . . . ." (Doc.

1, at ¶ 27). Section 1.5(i) of the Ordinance, as well as Act 2011-580 §§ 5(i) and 13(i), state:

> The decision of the hearing officer shall be the final decision by the City. A
> person or persons aggrieved by a decision may *file a petition for judicial review* to
> the District Court of Jefferson County, Alabama within 30 days after the date of
> entry of the decision. The District Court shall conduct the *appeal* in the case in the
> same manner as the Court hears a small claims civil action.

(Doc. 5, Exhibit B) (emphasis added).

Section 1.7(c) of the Ordinance states: "The City Attorney of the City is authorized to file

suit to enforce collection of unpaid fines or related fees and penalties, or both, imposed under this

Article by lawful means to secure such payments." (Doc. 5, Exhibit B).

### The Plaintiffs

On March 8, 2012 and March 12, 2012, Plaintiff Rhonda Lashon Stubbs was driving her

2001 Lexus automobile in the City when equipment provided by Redflex Traffic Systems

photographed her at a stop sign at the intersection of 24th Avenue Northeast and 23rd Avenue

Northeast, where "she allegedly ran the stop sign." (Doc. 1, at ¶ 1). Ms. Stubbs received a notice

that she had violated Center Point City Ordinance 2011-02 Article 1 and instructions on how to

"take care of the Notice." The instructions stated that she must select one of two options: either

pay the civil penalty by personal check, money order, or credit card, or exercise her right to a hearing by submitting a hearing request and appearing at the scheduled time. (Doc. 1, Exhibit 6).

According to the complaint, Ms. Stubbs paid her tickets "because the Defendants left her with the false impression that the administrative hearing would be binding and would be conducted by the 'Municipal Court.'" The complaint further alleges: "By leaving the Plaintiff with the false impression that she would appear in front of a 'court,' the Notice of Violation carried the full imprimatur of the State of Alabama and misled and intimidated Ms. Stubbs and the Class members into paying the 'fine.'" (Doc. 1, at ¶ 31). The Notice of Violation did not explain that the $100 fine could not be collected unless the City later filed a separate civil suit.

The complaint alleges that neither Ms. Stubbs nor any other Class Member were informed of the following matters:

> (1) "the Notice of Violation was not judicial in nature but was actually a non-binding collection notice;"
> (2) "the 'court' was actually staffed by an administrative hearing officer with no binding judicial power;" and
> (3) "the decision of the hearing officer could be reviewed *de novo* by a Jefferson County Court."

All of these omissions contributed to Ms. Stubbs's decision to pay the fine. Ms. Stubbs was not asked to pay and did not pay the $10 fee set out in Act 2011-580 § 16(b).

Beginning in February of 2012, Plaintiff Celeita Snow received fourteen citations for running a stop sign at Reed Road and Polly Reed Road in her 1999 Mercedes Benz automobile. Ms. Snow requested hearings on those citations and the City granted and scheduled the hearings. Ms. Snow received "Hearing Notification Letter[s]" stating: "Hearings are held at: Center Point Municipal Court, 2209 Center Point Parkway, Center Point AL 35215." (Doc 1, Exhibit 3).   Ms.

Snow then received notice that the City was postponing her hearing. She has not yet been notified of a rescheduled date for her hearing and has made no payment to the City regarding any of the Notices of Violation.

## Procedural Posture

Plaintiffs Stubbs and Snow filed their complaint in the Circuit Court of Jefferson County, Alabama on May 13, 2013. (Doc. 1, Exhibit A). On June 27, 2013, Defendants removed the case to federal court based on this court's federal question jurisdiction over Counts Two and Three and supplemental jurisdiction over the remaining counts. (Doc. 1, at ¶¶ 5-6). Plaintiffs seek to represent a Class consisting of "any and all individuals who were issued a Notice pursuant to Ordinance 2011-02." Plaintiffs bring the following claims: Count One for declaratory judgment as to alleged violations of the United States and Alabama constitutions[1], Count Two for deprivation of Plaintiffs' civil rights under color of state law pursuant to 42 U.S.C. § 1983, Count

---

[1] Plaintiffs seek a determination of their rights and obligations regarding the following issues: "(1) [whether] Ordinance 2011-02 is void *ab initio* as violative of the United States Constitution and the Alabama Constitution; (2) whether Ordinance 2011-02 is void *ab initio* as violative of the United States Constitution and the Alabama Constitution; (3) whether the lack of appellate review or the adjudication of the Plaintiffs' case without a judicial officer deprived Plaintiffs and others similarly situated violated (sic) Plaintiffs', and others similarly situated, rights to due process under the U.S. and Alabama Constitutions; (4) whether the Plaintiffs, and others similarly situated, must pay the $10.00 fee required by Act 2011-580, Section 16(b), but which the City of Center Point failed to collect; (5) whether the right of appeal granted to Plaintiffs, and others similarly situated, by Act 2011-580 has been violated; (7) (sic) whether the City of Center Point must adhere to section 6.11 of amendment 328 of the Alabama Constitution, and other specified portions of the Alabama Code relative to the selection or appointment of hearing officers; whether the administrative adjudications required by Act 2011-580 constitutes an administrative adjudication by the State of Alabama; (8) whether the fines paid to Defendants must be returned to Plaintiffs and others similarly situated; (9) whether holding of the property of the Class by the Defendants is a taking as prohibited by the Fifth and Fourteenth Amendments of the Untied States Constitution; and (10) whether the notices issued to Plaintiffs and others similarly situated falsely stated that the City of Center Point had a Center Point Municipal Court." (Doc. 1, at ¶ 51).

Three for violation of the Fair Debt Collection Practices Act, and Count Four for suppression of material facts. In response to the complaint, Defendants filed the motion to dismiss that is currently before the court, and the parties fully briefed the issue.

### The *Crowder* Litigation

In a separate action, three drivers who are not parties in this case challenged the decision of a hearing officer to uphold the traffic citations they had received under the Ordinance. On June 11, 2012, Judge David N. Lichtenstein of the Jefferson County District Court entered an order in each action, finding that the district court lacked subject-matter jurisdiction over the actions and purporting to transfer them to the Jefferson County Circuit Court. (Doc. 11, Exhibit A).

On August 17, 2012, Judge Lichtenstein, sitting as a circuit judge of the Jefferson County Circuit Court, entered an order in *City of Center Point v. Kenneth Crowder*, CV-2012-0929, finding that Alabama district courts do not have jurisdiction to hear appeals of any matters concerning fines, adjudications, or other actions pursuant to Ordinance 2011-02. (Doc. 1, at ¶ 24). This decision in the "*Crowder* litigation" is relied on in the complaint and discussed in both parties' briefs on Defendants' motion to dismiss.

In its motion to dismiss, the Defendants informed the court that an appeal was pending before the Alabama Supreme Court in the *Crowder* litigation. (Doc. 5, pg. 37). While this court was considering the motion, it discovered that the Alabama Court of Civil Appeals had issued a decision on the appeal. The Alabama Court of Civil Appeals found that the Jefferson County Circuit Court was "without jurisdiction to enter its August 17, 2012, judgments in these actions. Accordingly, those judgments are void, and the appeals are due to be dismissed." It based this decision on its finding that "the district court's purported transfers of the drivers' petitions for

8

judicial review were without effect because the trial court could not exercise exclusive original jurisdiction over those petitions, or appeals." (Doc. 11, Exhibit A).

On November 7, 2013, the court issued an Order requiring both parties to show cause in writing how the October 4, 2013 decision of the Alabama Court of Civil Appeals in the *Crowder* litigation affected the arguments set forth in their briefs on the motion to dismiss. "Defendants' Response to Show-Cause Order" informed the court that the City had filed an Application for Rehearing in Crowder, seeking "clarification and guidance as to whether the three drivers still have petitions for judicial review actively pending before the Jefferson County district court." (Doc. 11, pg. 1). "Plaintiffs' Response to Order to Show Cause" informed the court that during the 2013 Alabama legislative session, "the City of Center Point successfully persuaded the legislature to grant the circuit court jurisdiction to hear appeals from the administrative adjudications of its automated traffic enforcement system and eliminated the requirement of Act 2-11-580 that it operate a municipal court . . . Act 2013-228 effectively repealed Act 2011-580." (Doc. 12, pg. 5). Plaintiffs' response also attached Act 2013-228 as an exhibit. (Doc. 12-1).

On December 17, 2013, Defendants filed a notice with the court that on December 13, 2013, the Alabama Court of Civil Appeals denied the City of Center Point's Application for Rehearing in the *Crowder* litigation. (Doc. 13).

## III.    LEGAL DISCUSSION

For the sake of clarity, the court will deal with the various counts in a different order than that used in Plaintiffs' complaint and Defendants' motion to dismiss.

A.      **Count III - Violation of the Fair Debt Collection Practices Act**

Count III of Plaintiffs' complaint asserts that the "Defendants are guilty of making false or misleading representations in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6)." (Doc. 1, at ¶ 64). Defendants argue that by failing to respond to Defendants' arguments in its motion to dismiss regarding Count III, Plaintiffs have waived their objection on this matter. This is not the case. The case Defendants cite in their Reply brief applies to motions for summary judgment, not motions to dismiss. The Eleventh Circuit has explicitly addressed the abandonment of claims in response to a motion to dismiss:

> [A]t the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint. Accordingly, in considering the defendants' motion for judgment on the pleadings, the district court erred by going beyond the face of the complaint. [The plaintiff] did not abandon his due process and malicious prosecution claims by failing to adequately address them in his response brief.

*Boyd v. Peet*, 249 Fed. App'x 155, 157 (11th Cir. 2007) (internal citations omitted). *See also Gailes v. Marengo County Sheriff's Dept.*, 916 F. Supp. 2d 1238, 1241-44 (S.D. Ala. 2013) (finding that "the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). As such, Plaintiffs have not abandoned this claim and the court will evaluate the merits of whether it is due to be dismissed.

Defendants argue that Plaintiffs fail to state a claim as to the Fair Debt Collection Practices Act (FDCPA) because the FDCPA does not apply to traffic violations. This argument has merit. The FDCPA imposes liability on "debt collectors" who "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money

arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

In *Hawthorne v. Mac Adjustment, Inc.*, the Eleventh Circuit determined that "not all obligations to pay are considered 'debts' subject to the FDCPA." 140 F.3d 1367, 1371 (11th Cir. 1998). The Court found that the FDCPA is triggered only when that obligation arises out of a "specified 'transaction'" and then clarified that "when we speak of 'transactions,' we refer to consensual or contractual arrangements, not damages obligations thrust upon one as a result of no more than her own negligence." *Id*.

Under this precedent, a traffic ticket does not constitute a "debt" under the FDCPA because it is not the product of a consumer transaction, but is instead thrust upon its recipient as a result of inattention to traffic laws. Other district courts have reached similar conclusions. *See Marfut v. City of North Port, Fla.*, No. 8:08-cv-2006-T-27EAJ, 2009 WL 790111, at *8-9 (M.D. Fla. March 25, 2009) (finding that plaintiff failed to state a claim under the FDCPA where she alleged that the city was impermissibly collecting fines for violating a local permitting ordinance); *Durso v. Summer Brook Preserve Homeowners Ass'n*, No. 6:07-cv-2007-Orl-19KRS, 2008 WL 2557558, at *6 (M.D. Fla. June 23, 2008) (concluding that the fine imposed by the homeowners association did not create a debt under the FDCPA). Thus, even assuming all of the Plaintiffs' allegations are true, they have failed to state a valid FDCPA claim and Defendants' motion to dismiss is due to be GRANTED as to Count III.

**B.      Count II - Deprivation of Plaintiffs' Civil Rights Under Color of State Law**

Count II of the complaint alleges, pursuant to 42 U.S.C. § 1983, that Defendants "while acting under the color of state law, unlawfully deprived the Plaintiffs of their due process rights guaranteed them under the Fourteenth Amendment" by subjecting them to unlawful citations, depriving them of their property, providing no enforceable appellate review process, and adjudicating the alleged violation by a nonjudicial officer. (Doc. 1, at ¶¶ 53-60).  Defendants' motion to dismiss asserts that the complaint fails to state a claim upon which relief may be granted under § 1983. The Defendants also, however, make a standing argument as to one of the plaintiffs and a ripeness argument as to the other. Because standing and ripeness are jurisdictional, the court will address them first.

> *i. Ms. Stubbs lacks standing to make a due process challenge to a traffic citation from an automated camera in the City.*

Defendants argue that "Ms. Stubbs lacks standing to assert such a claim [challenging the constitutional sufficiency of the administrative process] because she cannot show that the alleged insufficiencies of the hearing process harmed her in any way." (Doc. 5, at 33). The court must consider the plaintiff's standing to assert a cause of action, "because standing is an element of the constitutional requirement of 'case or controversy,' [and] lack of standing deprives the court of subject matter jurisdiction." *In re Weaver*, 632 F.2d 461, 463 n.6 (11th Cir. 1980) (citing *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974)). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).

12

To establish standing under Article III of the U.S. Constitution, a plaintiff must show (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Also, the causal connection must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks, citations, and alterations omitted). "The line of causation between the [alleged] illegal conduct and injury" must not be "too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984).

In this case, while payment of the fine could be considered an injury, Ms. Stubbs injury is not causally connected to the conduct of which she complains because she paid her fine without taking advantage of the process provided by the City to challenge it. Even if that process were insufficient to satisfy constitutional standards, it did not cause Ms. Stubbs to voluntarily pay her fine; no traceable connection exists. Furthermore, were the court to find the process insufficient, Ms. Stubbs would receive no redress for having paid the fine. While the court has not found any Eleventh Circuit precedent specifically dealing with the standing of a plaintiff to challenge the due process of already paid fines, various other courts have made similar findings, supporting the court's reasoning here. *See Herrada v. City of Detroit*, 275 F.3d 553, 558 (6th Cir. 2001) (finding that the plaintiff "lacks standing to argue that hearings are not held despite requests by vehicle owners, because she elected to pay the fine rather than request a hearing"); *Mills v. City of*

13

*Springfield, Mo.*, No. 2:10-cv-04036-NKL, 2010 WL 3526208, at *6 (W.D. Mo. Sept. 3, 2010)

("the Court need not rule upon the constitutionality of the City of Springfield's procedures

because Plaintiffs do not have standing to challenge the procedures they declined to use"); *Clark*

*v. Humane Soc. of Carroll County, Inc.*, No. WMN-11-108, 2011 WL 2791041, at *6 (D. Md.

July 13, 2011), *aff'd,* 468 F. App'x 342 (4th Cir. 2012) ("courts have consistently held that,

where an individual elects to pay a civil fine and thus avoid the criminal procedures provided to

contest the alleged violation, that individual lacks standing to challenge the procedures they

declined to use").

Alternatively, even if Ms. Stubbs had standing to pursue this action, she has failed to state

a claim for a constitutional violation under § 1983. The Supreme Court has held that a

"constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it

is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494

U.S. 113, 126 (1990) (finding that the patient in a state mental health facility had sufficiently

stated a § 1983 claim, notwithstanding availability of postdeprivation tort remedies). Ms. Stubbs

may have adequately alleged a deprivation—the payment of her fine—but does not allege that the

City failed to provide due process because she admits that she never sought to challenge the

traffic citation. As such, Defendants motion to dismiss is due to be GRANTED as to Ms.

Stubbs's claim under Count II.

> *ii. Ms. Snow's 1983 claim is not ripe for adjudication.*

The Defendants also argue that Ms. Snow's claim is not ripe for adjudication. Like

standing, ripeness is a jurisdictional issue; however, "ripeness assumes that an asserted injury is

sufficient to support standing, but asks whether the injury is too contingent or remote to support

14

present adjudication." 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3532.1 (3d ed.).

In *National Advertising Co. v. City of Miami*, the Eleventh Circuit gave a thorough overview of the ripeness doctrine. 402 F.3d 1335 (11th Cir. 2005). Article III of the U.S. Constitution limits federal court jurisdiction to actual "cases" and "controversies." U.S. CONST. art. III, § 2. In addition to this constitutional limit, however, courts have also recognized important prudential limits on the power of federal courts to decide cases. *National Advertising*, 402 F.3d at 1339. "While the constitutional aspect of our inquiry focuses on whether the Article III requirements of an actual 'case or controversy' are met, the prudential aspect asks whether it is appropriate for this case to be litigated in a federal court by these parties at this time." *Id*. Even when constitutional requirements are met, prudential concerns may "counsel judicial restraint." *Id*. (quoting *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)).

In this circuit, the "ripeness inquiry requires a two part 'determination of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Id*. (quoting *Digital*, 121 F.3d at 589). Furthermore, courts have often invoked the ripeness doctrine when already pending state court proceedings "hold open the prospect that the federal questions may be altered or dissolved by further action in state courts." 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3532.1 (3d ed.).

In this case, the court finds that the pending traffic citation provides a "case or controversy" for the court to decide, but that prudential concerns counsel judicial restraint. The court looks first to the fitness of the issue for judicial decision. Ms. Snow received a traffic citation and is still in the process of challenging that citation. She requested a hearing, the City

granted the request, but the hearing has not yet occurred. Although Ms. Snow is not at fault that the hearing has been postponed, the delay is not unreasonable on the part of the City, given the uncertainty of the entire scheme due to the *Crowder* litigation, which was ongoing in state court until very recently, and the efforts to modify legislation. The court has no reason to believe that Ms. Snow will not receive her hearing now that the *Crowder* litigation has concluded. As such, Ms. Snow is still in the middle of her "process;" therefore, her claim that she has not received the process she is due under the constitution is not yet fit for judicial decision.

Furthermore, the same *Crowder* litigation that has caused the City to postpone its pending hearing would make it very difficult for this court to determine what process it should examine were it to conduct a constitutional due process evaluation on the merits of this case. Judge Lichtenstein's first order—as a state district court judge—concluded that the district court lacked subject-matter jurisdiction over the action and purported to transfer the action to the Jefferson County Circuit Court. Judge Lichtenstein's second order—as a state circuit court judge—declared that the Act failed to provide the district court with jurisdiction to hear appeals from the determination of the hearing officer. Since that time, the Alabama Court of Civil Appeals has found that the state circuit court did not have jurisdiction over the action and voided its judgment. The Alabama Court of Civil Appeals did not, however, rule on the merits of the state *district court's* determination that it lacked jurisdiction; as such, this court is still unable to determine which court would hear a challenge to a hearing officer's decision.

Although the *Crowder* litigation is likely over because the City's Application for Rehearing with the Alabama Court of Civil Appeals was denied, it did not ultimately resolve the issue of how the appellate process of this type traffic violation should proceed. While the district

court ruling that it lacked jurisdiction may stand, the merits of that decision were not considered by any of the state appellate courts. The due process issue in this case is not yet ripe for federal judicial decision because the state courts are in the best position to make such a determination.

Another factor that cautions this court against reaching a decision on the merits of this case is the passage of Alabama Act 2013-228, which repealed Act 2011-580, granted the state circuit court jurisdiction to hear appeals from the decision of the hearing officers. The existence of this 2013 Act shows that this issue is not only being worked out in the Alabama state courts, but in the legislature as well. The court cannot determine based upon the copy of the Act that Plaintiffs provided to the court whether the Act is retroactive and what effect it will have on currently pending challenges, such as Ms. Snow's. Until Ms. Snow gets her hearing and goes through the entire process of appealing her traffic citation, the issue is not ready for judicial consideration.

Finally, the court considers the Eleventh Circuit holding in *McKinney v. Pate* as it relates to the ripeness of Ms. Snow's claim. 20 F.3d 1550 (11th Cir. 1994). Although *McKinney* is not a ripeness doctrine case, its substantive application to the claims in this case make it relevant to the ripeness determination. Under *McKinney*, "[w]hen a state procedure is inadequate, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy." *Id.*, at 1560.

In *McKinney*, a former employee brought a § 1983 action alleging that his termination by the board of county commissioners violated his due process rights because the facially adequate termination procedure was biased against him. *Id.* The court found that "the appropriate forum for addressing McKinney's claim is not federal court but a Florida state court possessing the

ability to remedy the alleged procedural defect; that forum might well have prevented a violation of McKinney's procedural due process rights and thereby obviated the need for this suit." *Id.*, at 1561. The Court continued, finding that "even if McKinney suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *Id.*, at 1563 (emphasis in original).

The Eleventh Circuit further clarified this holding in *Horton v. Board of County Com'rs of Flagler County*, stating that "the *McKinney* rule looks to the existence of an opportunity-to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered." 202 F.3d 1297, 1300 (11th Cir. 2000). The Court noted that "the rule is not based on ripeness or exhaustion principles," but "on a recognition that the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also the remedial process state courts would provide if asked." *Id*.

The *McKinney* rule, as applied to this case, means that even if the hearing officer is biased, as alleged by the complaint, no due process violation exists unless the state courts fail to remedy the inadequate procedure. Ms. Snow has requested a hearing; the ordinance provides for a hearing; she must continue to pursue her remedy in state court before this court can determine whether a due process violation has occurred. Although *Horton* makes clear that *McKinney* itself is not a ripeness rule, this court still looks to it as one of the rules on the merits of a § 1983 due process claim that would apply in this case and that informs this court's decision concerning whether the claim is ripe. Because the court has not yet seen whether the state courts will provide

18

a remedy to the allegedly inadequate procedure, it does not have the necessary information to make a substantive determination under *McKinney*. Therefore, it concludes that the issue is not yet fit for judicial determination.

The second factor the court must take into account is the hardship to the parties of withholding court consideration. The Defendants are requesting that this case be dismissed; therefore, they should not suffer any hardship from its dismissal. Ms. Snow has not yet paid any money on her traffic citation and will not be prejudiced in any way by having to wait a bit longer for her appeal to be heard. She will not suffer any social stigma from having an unresolved traffic citation pending. Her driver's license has not been revoked or otherwise affected. She is free to continue driving and carrying out her business as usual. Should she receive any additional traffic citations from the cameras in issue, she will be free to challenge those just as she is challenging the ones that are currently pending against her. Because the court finds that the parties will not suffer any hardship if the court withholds consideration of this case, and because the court determines that the issue is not yet ripe for judicial consideration, the court will GRANT Defendants' motion to dismiss as to Ms. Snow's Count II claim and dismiss the claim for lack of ripeness based on prudential concerns.

*iii. Ms. Snow's claim is also due to be dismissed based on the doctrine of <u>Younger</u> abstention.*

As an alternative to this court's ripeness ruling, the court also finds that Ms. Snow's claim is due to be dismissed based on the doctrine of *Younger* abstention. In *Younger v. Harris*, the Supreme Court found that under some circumstances, a federal court should abstain from exercising its jurisdiction to avoid interfering with state court proceedings. 401 U.S. 37 (1971).

19

While *Younger* itself applied to state criminal proceedings, "its principles are 'fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Federal courts are typically required to exercise the jurisdiction given them, but "in exceptional cases federal courts may and should withhold equitable relief to avoid interference with state proceedings." *Id*.

The Supreme Court has explained that "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system . . . evidence the state's substantial interest in the litigation. Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *31 Foster Children*, 329 F.3d at 1274  (internal citation and quotations omitted). In determining whether to apply the *Younger* doctrine, a court must ask three questions: "first, do the proceedings constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Id*.

 First, Ms. Snow's still-pending hearing on her traffic citation constitutes an ongoing state judicial proceeding. *See Middlesex County*, 457 U.S. at 432 (finding that a state bar disciplinary hearing constitutes an ongoing state judicial proceeding because "a disciplinary proceeding is judicial in nature" and "of a character to warrant federal-court deference."). The hearing officer performs the role of a court in evaluating the alleged violation and making a finding as to the driver's liability. Furthermore, the hearing is *but the first step in the judicial process* and if the driver pursues the challenge, it will make its way through the Alabama state court system.

20

Although Ms. Snow's hearing is currently postponed, this delay does not prevent it from being on ongoing state judicial proceeding. In *Women's Community Health Center of Beaumont, Inc. v. Texas Health Facilities Commission*, the Fifth Circuit found that the fact that the state did not actively pursue its state court action while the federal court action was pending did not preclude the application of *Younger* abstention. 685 F.2d 974, 979 (5th Cir. 1982). The Court stated: "We do not think, however, that the dormancy of the enforcement proceeding reflects any bad faith on the part of the state," but rather "reflects a sound exercise of prosecutorial discretion." *Id*. Likewise, in this case, the City's decision to postpone the hearings while the *Crowder* litigation works its way through the court system and the issue is addressed legislatively does not reflect bad faith, but a wise decision to temporarily halt the proceedings until the courts and legislature decide how best to proceed.

Second, the proceedings in this case implicate important state interests. Although at first glance this proceeding may concern a mere traffic ticket, it has become a part of a much larger dispute about the jurisdiction of state courts. As such, it is "necessary . . . for the functioning of the state judicial system." *31 Foster Children*, 329 F.3d at 1274.

Third, an adequate opportunity exists in the state proceedings to raise constitutional challenges. The Alabama Supreme Court has long held that "whenever a legal right arises, and the state court is competent to administer justice, the right may be asserted in the state court, although the federal court may have jurisdiction of the same question, subject, however, to the proviso that there is no law limiting jurisdiction to the federal courts." *Raisler v. Oliver*, 12 So. 238 (Ala. 1893). Furthermore, the United States Supreme Court has also held that "the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the

state legislature," and are, therefore, required to be enforced in state courts in most

circumstances. *Hewlett v. Rose*, 496 U.S. 356, 367 (1990). As such, Ms. Snow will have the

opportunity to raise her constitutional challenge in her appeal to one of the Alabama state courts

if she receives an unfavorable hearing decision.

Because the issue that Ms. Snow brings before the court satisfies all three elements

necessary for the court to abstain under the *Younger* doctrine, the court will GRANT Defendants'

motion to dismiss as to Ms. Snow's § 1983 claim.

### C.    Count I - Declaratory Judgment

Count I of Plaintiffs' complaint asserts that a bona fide justiciable controversy exists

between the Plaintiffs and Defendants and seeks a determination of the Plaintiffs' rights and

obligations with respect to ten different issues, some of which are matters of federal law and

others are matters of state law. The federal matters, as presented in the complaint, are: (1)

whether Ordinance 2011-02 is void *ab initio* as violative of U.S. Constitution; (2) whether the

lack of appellate review or the adjudication of the Plaintiffs' case without a judicial officer

violated Plaintiffs' rights to due process under the U.S. Constitution; and (3) whether holding of

the property of the Class by the Defendants is a taking as prohibited by the Fifth and Fourteenth

Amendments of the United States Constitution.[2] This court reads all three of these matters as

_____

[2]Although the third matter is framed as a "takings" issue under the Fifth Amendment, it
appears that Plaintiffs are merely restating their due process claim. Earlier in the complaint,
Plaintiffs state: "Furthermore, the United States Constitution declares that, 'No person...be
deprived of life, liberty, or property, without due process of law.' The Takings Clause of the Fifth
Amendment is applicable to the States through the Fourteenth Amendment." (Doc. 1 at ¶ 23).
    The Fifth Amendment clause that the complaint quotes is not the "Takings Clause," but
the Fifth Amendment Due Process Clause. The "Takings Clause" states: ". . . nor shall private
property be taken for public use, without just compensation." U.S. CONST. amend X; *see also
Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 536 (2005).  Because this part of the Fifth

restatements of the same ultimate issue: whether the traffic citation scheme established by Act 2011-580 and Ordinance 2011-02 deprive the Plaintiffs of due process of law.

Under Federal Rule of Civil Procedure 57, a party may request a declaratory judgment under 28 U.S.C. § 2201. Section 2201(a) states: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The granting of a declaratory judgment rests in the sound discretion of the district court. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942); *see also Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."). Although this court has the authority to rule on Plaintiffs' request for a declaratory judgment, it declines to exercise that power.

As to Ms. Snow's claims, the court has many of the same concerns about the declaratory judgment claim as it did about the § 1983 claim. The discretionary decision of whether to issue a declaratory judgment piggy backs to the ripeness analysis in this case. Just as the court decided the § 1983 claim was note ripe for prudential reasons—even though it may be a valid Article III case or controversy—the court *could* decide Plaintiffs' declaratory judgment count, but chooses

_____

Amendment does not apply to the facts of this case—as no property is being held, the court assumes that Plaintiffs are actually referring to the Fifth Amendment Due Process Clause. Although they are correct in stating that the Fourteenth Amendment incorporates the Fifth Amendment to the states, such a route is unnecessarily circuitous in this circumstance, as the Fourteenth Amendment itself contains its own Due Process Clause that applies directly to the states.

not to out of respect for the state court system and its autonomy to work this issue out itself. The First Circuit stated it well when it said: "[W]hen a state court has matters well in hand, withholding federal declaratory relief premised on constitutional grounds will maintain and facilitate federalism; foster state-created accommodations of constitutional principles and state interests; and husband federal judicial resources." *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 497 (1st Cir. 1992).

In *Brillhart*, the Supreme Court reviewed a case involving "the important question affecting the interrelationship of the state and federal courts in the administration of the Federal Declaratory Judgments Act." 316 U.S. at 494. It noted that the district court was not compelled to exercise its jurisdiction and stated that "gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id*., at 495. Likewise, in *Samuels v. Mackell*, which was a companion case to *Younger v. Harris*, the Supreme Court determined that where *Younger* was dispositive on a prayer for an injunction, an alternative prayer for declaratory judgment did not require a different result. 401 U.S. 66, 68-69 (1971). Essentially, a plaintiff cannot bypass *Younger* abstention by requesting a declaratory judgment when the same concerns for unnecessary interference with state litigation still apply.

The court has already discussed the many reasons why this case is not yet ready to be decided in federal court, including Ms. Snow's outstanding hearing request, the uncertainty resulting from the *Crowder* litigation, and the recent passage of Alabama Act 2013-228. (*See* Section B.ii, *supra*). The court will not rehash those reasons here, but simply notes that they support the decision not to entertain the request for declaratory judgment as to Ms. Snow's claims.

24

As to Ms. Stubbs's claims, she does not have standing to request a declaratory judgment on the constitutional sufficiency of a procedure she did not invoke any more than she had standing to bring a § 1983 claim about it. "That a plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, does not relieve him of the burden of satisfying the prerequisites for standing, since 'a declaratory judgment may only be issued in the case of an actual controversy." *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). Alternatively, even if Ms. Stubbs did have standing, the court would still decline to exercise its discretionary jurisdiction over her declaratory judgment claim for many of the same reasons it declines to exercise jurisdiction over Ms. Snow's claim. Although Ms. Stubbs is not awaiting a hearing like Ms. Snow, the Alabama state courts and legislature are still working through the issue; therefore, this court chooses not to interfere. As such, the court will GRANT Defendants' motion to dismiss as to the federal portions of Count I of Plaintiffs' complaint.

Because these federal claims, and all other federal claims in this case, are being dismissed from this suit, the court will REMAND the remaining state law aspects of Count I for Declaratory Judgment to state court. *See Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1226 (11th Cir. 2010) ("federal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction").

### D.     Count IV - Suppression of Material Facts

Count IV, the final count of Plaintiffs' complaint, alleges that Defendants suppressed material facts in violation of Alabama Code § 6-5-102. This count consists entirely of a state law claim and is only before this court via supplemental jurisdiction. The court has dismissed all

25

claims over which it has original jurisdiction, and, therefore, declines to exercise supplemental jurisdiction over the Plaintiffs' remaining state law claims. The court will REMAND Count IV to the Circuit Court of Jefferson County, Alabama.

**IV.    CONCLUSION**

For the reasons stated above, the court finds that the "Joint Motion to Dismiss by Defendant City of Center Point, Alabama and Defendant Redflex Traffic Systems Inc" is due to be GRANTED IN PART and REMANDED IN PART to the Circuit Court of Jefferson County, Alabama. The court will DISMISS Counts II and III in their entirety; DISMISS the federal claims in Count I, as outlined above, and REMAND the remaining state claims in Count I and all of Count IV to the Circuit Court of Jefferson County, Alabama. The court simultaneously will enter a separate Order to that effect.

DONE and ORDERED this 19th day of December, 2013.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE